UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARK DAVID HOOK, Petitioner | CIVIL ACTION NO. 1:17-CV-452-P |
| VERSUS | CHIEF JUDGE DRELL |
| JEFFERSON SESSIONS, Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus (28 U.S.C. § 2241) filed by pro se Petitioner Mark David Hook ("Hook") (A088927046). Hook is an immigration detainee in the custody of the Department of Homeland Security/U.S. Immigration and Customs Enforcement ("DHS/ICE"). He is being detained at the LaSalle Detention Center in Jena, Louisiana. Hook claims that his detention violates the rule announced in Zadvydas v. Davis, 533 U.S. 678 (2001).

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

I.  **Factual Background**

Hook has filed two prior § 2241 petitions in this Court, arguing that his detention is unlawful under Zadvydas. (Case Nos. 3:09-cv-423, 2:11-cv-131). Hook's first § 2241 petition was dismissed because the statutory removal period had been continuously tolled due to Hook's failure to cooperate with his removal. (Case No. 2:11-cv-131, Doc. 81, pp. 2-4). Hook's motion to reopen the case was denied because

"his detention is a result of his own failure to cooperate with [ICE] and to provide information about his identity." (Case No. 3:09-cv-00423, Doc. 23).

After Hook filed a second § 2241 petition, a two-day evidentiary hearing was conducted, at which the government introduced 70 exhibits. (Case No. 2:11-cv-00131, Doc. 81). Following the hearing, the magistrate judge reported:

> Petitioner claims that he is named "Mark David Hook." Doc. 55, p. 10. He claims that he was born on March 13, 1970, and was born and raised in London, England. Id. Petitioner testified that he left the United Kingdom in approximately 2002. Id. at 11–12.
>
> Petitioner has been in ICE custody since April 2, 2008. *See* doc. 55, p. 12; doc. 45, ex. G-1. On that date, a Border Patrol Agent encountered petitioner during a transportation check at the Greyhound Bus Station in Baton Rouge, Louisiana. See doc. 45, ex. G-1. Petitioner told the Case agent that his name was "Mark David Hook" and that he was a citizen of the United Kingdom. Id. He claimed that he had entered the United States two weeks earlier under the Visa Waiver Program,[1] and that he had accidentally left his passport in New York City. Id. An investigation revealed that petitioner actually entered the United States at San Juan, Puerto Rico, in June 2004 via American Airlines Flight 01130 from Antigua. Id. When presented with this information, petitioner admitted that it was true. Id. He also stated that he had been living in New York City since he arrived in 2004. Id.
>
> Because petitioner failed to depart as required under the Visa Waiver Program, the Border patrol agent placed petitioner under ICE custody to await removal from the United States. Id. ICE issued a final order of removal on April 2, 2008, the same day as the arrest. See doc. 45, exs. G-2, G-3, G-4. Once he was in ICE custody petitioner applied for a new passport from the United Kingdom Passport Service with the assistance of his deportation officer. See doc. 55, pp. 13–15; doc. 45, ex. G-5. The

---

[1] "The [Visa Waiver Program] permits eligible nationals from certain designated countries to apply for admission to the United States for ninety days or less as non-immigrant visitors without first obtaining a visa." McCarthy v. Mukasey, 555 F.3d 450, 459–60 (5th Cir. 2009) (citing 8 U.S.C. § 1187). "However, the statute imposes upon every participating alien a reciprocal waiver requirement. Participating aliens must waive 'any right . . . to contest, other than on the basis of an application for asylum, any action for removal . . . .'" Id. (citing 8 U.S.C. § 1187(b)(2).

> application listed the lost passport number as 029518553. See doc. 45, ex. G-5.
>
> To date, ICE has been unsuccessful in deporting petitioner for a simple reason—the British do not believe that the "Mark David Hook" in ICE custody is who he claims to be. By letter dated June 20, 2008, the British Consulate informed petitioner that a passport bearing the number he provided had already been reported lost by another individual. See doc. 45, ex G-17. The letter stated that, because this person had provided sufficient proof of his identity, the passport was replaced. Id. Therefore, the Consulate informed petitioner that it would need more convincing proof of his identity in order to provide him consular assistance. Id.
>
> Over the next few months ICE and the British Consulate repeatedly requested information from petitioner in order to establish his identity. Hook v. Holder, 3:09-cv-00423 (W.D. La. 2009), doc. 18, pp. 8–9. The only identification that he could provide was a purported United Kingdom driver's license which he was carrying with him at the time of his arrest. Id. at 7. He claimed that he could not obtain his passport or other documents because all of his identification (and the means of accessing it) was in his luggage that had been seized by the Border Patrol. Doc. 55, pp. 19–22. Further complicating removal efforts, petitioner repeatedly refused to answer questions about himself or claimed he could not remember details due to "medical reasons." Hook v. Holder, 3:09-cv-00423 (W.D. La. 2009), doc. 18, pp. 5–6. ICE eventually requested the assistance of INTERPOL in order to determine petitioner's identity and nationality but INTERPOL was unable to do so. Id. at 8, n. 10; *see also* doc. 45, ex. G-24.
>
> The British Consulate withdrew petitioner's passport application on August 15, 2008, due to his inability to prove his identity. Hook v. Holder, 3:09-cv-00423, doc. 18, p. 9. On September 9, 2008, ICE informed petitioner that his detention was being extended due to his failure to make timely and good faith efforts to obtain travel or other documents necessary for his removal. Id.

(Case No. 2:11-cv-131, Doc. 81, pp. 2-4). Hook's second § 2241 petition was dismissed.

The Fifth Circuit affirmed the dismissal, noting that "Hook's failure to cooperate with the efforts to remove him tolled the running of the removal period." See Hook v. Lynch, 639 F. App'x 229, 230 (5th Cir. 2016) (citations omitted). The court

stated: "Hook has failed to show that under the circumstances, his continued detention violates his constitutional rights and that 'there is no significant likelihood of removal in the reasonably foreseeable future.'" Id. at 230 (citing Zadvydas v. Davis, 533 U.S. 678, 701 (2001)).

Because Hook's first two petitions raise the same facts and claims as the current petition, this Court takes judicial notice of the findings and records of the prior related proceedings. See Fed. R. Evid. 201; Matter of Missionary Baptist Church Foundation of Am., Inc., 712 F.2d 206, 211 (citations omitted) ("A court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom.").

## II. Law and Analysis

Once an alien is ordered removed, the Attorney General is obligated to effect the removal within 90 days. See 8 U.S.C. § 1231(a)(1)(A). However, it is presumptively constitutional for an alien to be detained for six months past the 90-day removal period following a final order of removal. See Zadvydas 533 U.S. at 700-01. After the expiration of the six-month period, an alien may seek his release from custody by demonstrating a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Agyei–Kodie v. Holder, 418 F. App'x 317, 318 (5th Cir. 2011).

"The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the

4

alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C.A. § 1231(a)(1)(C). Additionally, the Fifth Circuit has held that, if an alien "by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about." Balogun v. I.N.S., 9 F.3d 347, 351 (5th Cir. 1993).

This District Court and the Fifth Circuit have previously determined that Hook's failure to cooperate with the efforts to remove him tolled the running of the removal period. See Hook, 639 F. App'x at 230.

Therefore, in order to state a claim under Zadvydas, Hook must show that the 90-day removal period is no longer being tolled by his failure to cooperate; that the six-month presumptively reasonable removal period announced in Zadvydas has passed; and that there is no significant likelihood of removal in the reasonably foreseeable future.

Hook was ordered to amend his petition to provide allegations showing that he is no longer the cause of his continued detention. (Doc. 5). Hook was instructed to state what steps he has taken to assist in his removal. Hook was directed to provide copies of any documents pertaining to the review of his custody status since the Fifth Circuit's ruling on February 1, 2016. Finally, Hook was ordered to allege and explain why there is no significant likelihood of his removal in the reasonably foreseeable future. (Doc. 5).

5

According to his amended petition, on February 2, 2017, a deportation officer interviewed Hook, who affirmed that he would cooperate in obtaining travel documents for Nigeria. (Doc. 6, p. 6). Hook was allegedly interviewed by the Nigerian Embassy on March 2, 2017. (Doc. 6, p. 8). Hook filed this petition on March 23, 2017. At the time of filing, not more than six months had passed since Hook allegedly cooperated with removal efforts. Therefore, Hook cannot meet the requirement of Zadvydas.

Even if Hook could show that he began cooperating six months prior to filing this petition, Hook is not entitled to relief. Hook argues that, despite his cooperation with the Nigerian officials, "there is no significant likelihood that the Nigerian Government will provide travel permission in a timely fashion." (Doc. 6, p. 11). Hook provides no support for his conclusion that Nigeria will not issue travel documents. Thus, even if Hook is now cooperating with DHS, he has not provided any facts indicating that there is no significant likelihood of his removal in the reasonably foreseeable future.

III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that Hook's § 2241 petition be DENIED and DISMISSED, without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen

(14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __7th__ day of August, 2017.

```
                                    Joseph H.L. Perez-Montes
                                    United States Magistrate Judge
```